IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| PAMELA FLYNT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | Case No. CIV-12-1248-HE |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of the Social ) | |
| Security Administration,[1] ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. §405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's application for disability insurance benefits (DIB) under the Social Security Act. This matter has been referred to the undersigned magistrate judge for initial proceedings consistent with 28 U.S.C. §636(b)(1)(B)-(C). The Commissioner has answered and filed the administrative record [Doc. No. 11] (hereinafter TR. ___). The parties have briefed their positions, and the matter is now at issue. For the reasons stated herein, it is recommended that the Commissioner's decision be **REVERSED AND REMANDED** for further proceeding consistent with this Report and Recommendation.

---

[1] Carolyn W. Colvin became Acting Commissioner of the Social Security Administration on February 14, 2013. Therefore, pursuant to Rule 25(d) (1) of the Federal Rules of Civil Procedure, Acting Commissioner Colvin is hereby substituted for Commissioner Michael J. Astrue as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of § 405(g) of the Social Security Act, 42 U.S.C. § 405(g).

## PROCEDURAL HISTORY

On April 2, 2007, Plaintiff filed an application for DIB alleging a disability beginning on November 25, 2006. Her application was denied on initial consideration and on reconsideration at the administrative level (TR. 285). At her request, Plaintiff appeared at a hearing before an administrative law judge (ALJ) on September 4, 2008 (TR. 285; 22-68). The ALJ issued an unfavorable decision on March 16, 2009, finding that Plaintiff was not disabled (TR. 11-21). The Appeals Council denied Plaintiff's request for review (TR. 5-8).

Plaintiff appealed the Commissioner's final decision to this Court. By order entered October 15, 2010, this Court adopted the Report and Recommendation submitted by Magistrate Judge Valerie Couch, reversed the Commissioner's decision and remanded the case to the Commissioner (TR. 300-313). As instructed, the Appeals Council remanded the case, and it was assigned to the same ALJ (TR. 285).

But while Plaintiff's appeal to this Court was pending, Plaintiff filed a subsequent application for DIB on September 25, 2009 (TR. 351-352). The application was denied on April 5, 2010 (TR. 320-324), and Plaintiff requested reconsideration on April 21, 2010 (TR. 325). Before Plaintiff's request for reconsideration was addressed, however, this Court had reversed and remanded the Commissioner's decision on Plaintiff's first application (TR. 326-327). The Appeals Council determined that the remand of the ALJ's first unfavorable decision rendered the subsequent application duplicative. The ALJ was instructed, therefore, to associate the claim files of the first and second applications and issue a new decision (TR. 285; 314-317).

Plaintiff appeared at a second administrative hearing before the ALJ on January 10, 2012 (TR. 520-560). On May 8, 2012, the ALJ issued a second unfavorable decision (TR. 282-299). The Appeals Council denied Plaintiff's request for review (TR. 275-277), and the May 8, 2012 decision of the ALJ became the final decision of the Commissioner. It is the second unfavorable decision that is the subject of this appeal.

## STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *See Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (quotation omitted). A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it. *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004). The court "meticulously examine[s] the record as a whole, including anything that may undercut or detract from the [administrative law judge's] findings in order to determine if the substantiality test has been met." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (citations omitted). Therefore, "in addition to discussing the evidence supporting his decision, the ALJ must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.2d 1007. 1010 (10th Cir. 1996).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the

evidence or substitute its own judgment for that of the Commissioner. *See Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quotations and citations omitted).

## THE ADMINISTRATIVE DECISION

Plaintiff's date last insured for DIB was December 31, 2010 (TR. 285). Thus, the Commissioner's decision covers the time period from November 25, 2006, the alleged onset date, through December 31, 2010.

In addressing Plaintiff's disability applications, the ALJ followed the sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. § 404.1520. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since her alleged onset date (TR. 288).

At step two, the ALJ determined that Plaintiff has severe impairments consisting of a neck condition, a left shoulder condition, and high blood pressure. The ALJ specifically determined at step two that Plaintiff's asthma and depression are not "severe" impairments (TR. 288).

At step three, the ALJ found that none of Plaintiff's impairments singly, or in combination, meets or equals any of the presumptively disabling impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 292).

At the first phase of step four, the ALJ assessed Plaintiff's residual functional capacity (RFC):

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except sit for 6 hours; stand for 6 hours; no climbing of ladders, ropes or scaffolds, or balancing; occasionally climb stairs and ramps, kneel,

> crouch, crawl, or stoop; and no overhead reaching with the left upper extremity

(TR. 293).

At the second phase of step four, the ALJ determined that Plaintiff's past relevant work as child care attendant and housekeeper were classified as medium work and that her past relevant work as mail room clerk was classified as light work (TR. 297). At the third phase of step four, the ALJ determined that Plaintiff could not perform her past relevant work (TR. 297). Based on the testimony of a vocational expert (VE), the ALJ found at step five of the sequential evaluation that during the relevant period, Plaintiff could have performed light, unskilled jobs which exist in significant numbers in the national economy such as electronic assembler, cashier II, and records clerk (TR. 298). Thus, the ALJ determined that Plaintiff was not disabled at any time between November 25, 2006, and December 31, 2010.

## ISSUES PRESENTED

Plaintiff challenges the ALJ's credibility analysis; the ALJ's finding that Plaintiff's mental impairment is not severe; and the ALJ's assessment of Plaintiff's RFC.

## ANALYSIS

### I.   The ALJ's Credibility Analysis

Plaintiff contends that the ALJ erred by failing to closely and affirmatively link her credibility findings regarding Plaintiff's allegations of physical pain to substantial evidence in the record (Pl.'s Br. at 6). This argument implicates the framework for the proper analysis of a claimant's allegations of pain first set forth in *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987).

"A claimant's subjective allegation of pain is not sufficient in itself to establish disability." *Thompson v. Sullivan*, 987 F.2d 1482, 1488 (10th Cir. 1993). Instead, "[b]efore the ALJ need even consider any subjective evidence of pain, the claimant must first prove by objective medical evidence the existence of a pain-producing impairment that could reasonably be expected to produce the alleged disabling pain." *Id.* (citations omitted). The Tenth Circuit Court of Appeals explained:

> The framework for the proper analysis of Claimant's evidence of pain is set out in *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987). We must consider (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling.

*Id.* (quotation omitted).

To determine the credibility of pain testimony, the ALJ should consider such factors as:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Hargis v. Sullivan*, 945 F.2d 1482, 1489 (10th Cir. 1991) (quotation omitted).

The Commissioner's first unfavorable decision, composed by the same ALJ who wrote the unfavorable decision currently under review, was reversed and remanded because the ALJ failed to closely and affirmatively link her credibility findings regarding

Plaintiff's allegations of pain to substantial evidence in the record (TR. 301-312). In the first decision, the ALJ supported her credibility determination as follows:

> [T]he claimant went to Arkansas in July 2008. The undersigned finds that the ability to travel this distance is inconsistent with her allegations of total disability. In addition, the undersigned notes that a letter of reply dated September 9, 2008, the claimant [sic] attorney noted that Dr. Manning, the claimant's treating physician, would not complete a functional report. The undersigned finds that the foregoing indicates that the claimant's physician does not consider her disabled. Finally, the undersigned notes that the claimant's husband has been on disability since 2007

(TR. 19). The Magistrate Judge found that the facts cited by the ALJ were not closely and affirmatively linked to substantial evidence in the record (TR. 306). For example, the Magistrate Judge rejected the ALJ's finding that a one-time trip to Arkansas rendered Plaintiff's subjective complaints of pain not credible (TR. 308). Moreover, the Magistrate Judge found Dr. Manning's alleged failure to complete a functional report irrelevant. Finally, the Magistrate Judge found it inappropriate and prejudicial for the ALJ to base her adverse credibility finding on the fact that Plaintiff's husband is disabled (TR. 308).

In the case currently before this Court, the ALJ conceded that Plaintiff's medically determinable impairments "could reasonably be expected to cause the alleged symptoms" (TR. 294). But the ALJ stated that Plaintiff's statements "concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the . . . residual functional capacity assessment" (TR. 294). To support her credibility finding, the ALJ relied on insignificant inconsistencies in Plaintiff's statements about driving and watching television, on Plaintiff's reported

7

activities of daily living that are really quite limited, and, of course, on the one-time trip to Arkansas:

> The claimant's reports regarding her activities of daily living are inconsistent. She reported in April 2007 and December 2009 that she does not drive. In September she reported that she does drive. The claimant consistently reported in her adult function reports that she watches television. She additionally reported it as a hobby. However, at the most recent hearing, the claimant reported that she just looks at the television and does not watch it because of difficulty concentrating. However, the claimant's adult function report reflects other activities such as reading and paying bills which require a degree of concentration which would be required for unskilled work. The claimant's credibility is diminished due to her inconsistent statements.
>
> Further, it is noted that the claimant feeds her beagle, cooks, drives, does laundry, visits her son, traveled to Arkansas in August 2008, and takes her disabled husband to the doctor. These activities exceed what one would expect.[2]

(TR. 295). The ALJ did not consider the fact that the functional reports she found inconsistent spanned a four-year period of time. Plaintiff's reports of driving or not driving could very well reflect the reality of that time period. In any case, the ability to drive short distances does not demonstrate that a claimant can sustain full-time employment. At the second hearing, Plaintiff testified that she drives once or twice a week. Plaintiff's testimony that she drives her husband to appointments with doctors in Midwest City from their home in Del City is not significantly different from her functional reports (TR. 536). The ability to drive sporadically does not undermine one's credibility regarding pain.

---

[2] The ALJ's incomplete sentence regarding "what one would expect," hampers the review of this Court and encourages the Court to engage in inappropriate *post hoc* speculations.

Likewise, evidence that a claimant engages in limited activities does not establish that the claimant can engage in light or even sedentary work activity. *See Gossett v. Bowen*, 862 F.2d 802, 807 (10th Cir. 1988) (claimant's testimony that he camped out frequently, hunted and fished, had no difficulties driving his standard-shift utility vehicle and occasionally mowed the lawn did not establish that the claimant could engage in light or sedentary work activity); *See also Thompson v. Sullivan*, 987 F.2d at 1491. The daily activities cited by the ALJ are not significant enough to preclude application of the general rule that limited daily activities do not establish that a claimant can engage in light or sedentary work activity. Plaintiff's limited activities of daily living are not sufficient to support the ALJ's adverse credibility findings. As for the one-time trip to Arkansas for a family reunion, Plaintiff testified that her daughter drove, that she rode in the backseat, and that "it killed me the whole way" (TR. 540).

Additionally, the ALJ concluded that Plaintiff's reluctance to undergo neck surgery "suggests that the symptoms may not have been as serious as has been alleged in connection with this application and appeal" (TR. 295). But the ALJ apparently did not hear or listen to Plaintiff's testimony as to why she did not want to undergo neck surgery. Plaintiff testified that, because she does not have insurance and because she is poor, she would be able to get a surgical procedure only at the University of Oklahoma Medical Center. Having received care at that facility before, mostly from medical students, Plaintiff compared her experience to being "a guinea pig" for the medical students (TR. 542). Plaintiff testified that she had undergone pain management at the facility, after which she suffered from a collapsed lung (TR. 543). Plaintiff's reluctance to undergo neck surgery, in this case, does not constitute substantial evidence in

9

support of the ALJ's credibility determination. Accordingly, this error requires reversal and remand for further proceedings.

## II. The ALJ's Analysis of Plaintiff's Alleged Mental Impairments

Plaintiff contends that the ALJ further erred in failing to find her mental impairments to be "severe."

Agency regulations require an ALJ to use a "special technique" in determining whether a claimant has a medically determinable mental impairment and, if so, the resulting degrees of functional limitations in four functional areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. § 404.1520a(c)(3).

On March 13, 2010, Dr. Amal Chakraburtty examined Plaintiff and conducted a consultative mental status examination. As the ALJ acknowledged, Dr. Chakraburtty determined that Plaintiff has a medically determinable "mood disorder," depression and anxiety, secondary to her general medical condition (TR. 290; 466-469).

On October 2, 2007, Burnard L. Pearce, Ph.D., completed a Psychiatric Review Technique form (PRT) in which he assessed Plaintiff's functional limitations resulting from her mood disorder. Dr. Pearce first determined that Plaintiff's mental impairments are not severe (TR. 221). Dr. Pearce then determined that Plaintiff has mild restriction of activities of daily living, mild difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence or pace, and no episodes of decompensation (TR. 296; 231). On March 29, 2010, Janice B. Smith, Ph.D., completed a second PRT. Dr. Smith assessed the same functional limitations resulting from Plaintiff's mood disorder as did Dr. Pearce (TR. 296; 471-484).

The ALJ found that Plaintiff's medically determinable impairment of depression "did not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and was therefore nonsevere" (TR. 291). Contrary to Plaintiff's contention, the ALJ's finding is supported by the findings of Dr. Pearce and Dr. Smith as well as the Agency regulations:

> If we rate the degree of your limitation in the first three functional areas as "none" or "mild" and "none" in the fourth area, we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities

20 C.F.R. § 404.1520a(d)(1). Plaintiff does not identify any evidence that would suggest limitations in the four functional areas beyond those assessed by Dr. Pearce and Dr. Smith. Accordingly, the ALJ's assessment of Plaintiff's mental impairment is supported by substantial evidence in the record.

## II.      **The ALJ's RFC Assessment**

The ALJ determined that Plaintiff could perform a limited range of light work. As discussed above, this case should be reversed and remanded for further consideration of Plaintiff's credibility. The ALJ's rejection of Plaintiff's allegations of disabling pain renders the RFC suspect because the credibility findings are not supported by substantial evidence in the record. On remand, the Commissioner will necessarily formulate an RFC properly considering Plaintiff's credibility as to her physical pain. Therefore, this Court need not address Plaintiff's issues related to the ALJ's RFC determination.

## RECOMMENDATION

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ and the pleadings and briefs of the parties, the undersigned magistrate judge finds that the decision of the Commissioner should be **REVERSED AND REMANDED** for further proceedings consistent with this Report and Recommendation.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file specific written objections to this Report and Recommendation. *See* 28 U.S.C. §636 and Fed. R. Civ. P. 72. Any such objections should be filed with the Clerk of the District Court by **February 14, 2014**. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Casanova v. Ulibarri*, 595 F.3d 1120, 1123 (10th Cir. 2010).

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

**ENTERED** on January 31, 2014.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE